18 A.3d 1082 (2011)
420 N.J. Super. 121
In the Matter of the Denial of the Application of Giles W. CASALEGGIO for a Retired Law Enforcement Officer Permit to Carry a Handgun.
No. A-4924-09T4.
Superior Court of New Jersey, Appellate Division.
Submitted March 22, 2011.
Decided May 16, 2011.
*1083 Needleman and Pisano, attorneys for appellant Giles W. Casaleggio (Frank Pisano, III, Montville, on the brief).
Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent State of New Jersey (Steven E. Braun, Chief Assistant Prosecutor, of counsel and on the brief).
Before Judges CARCHMAN, GRAVES and MESSANO.
The opinion of the court was delivered by
GRAVES, J.A.D.
Giles W. Casaleggio appeals from a Law Division order that affirmed the denial of his application for a permit to carry a handgun as a retired law enforcement officer. Casaleggio contends that he qualifies for the permit pursuant to N.J.S.A. 2C:39-6(l) based on his prior employment as an assistant prosecutor and deputy attorney general. For the reasons that follow, we affirm.
In 1973, Casaleggio was hired by the Union County Prosecutor's Office as an assistant prosecutor. At that time, he was "issued a firearm" and "trained in firearms operations." Casaleggio subsequently joined the Passaic County Prosecutor's Office, where he remained from 1975 to 1983 and ultimately attained "the title of chief assistant prosecutor in charge of narcotics and organized crime investigation." In 1983, he moved to the Morris County Prosecutor's Office, where he was "in charge of [the] narcotics task force." From 1985 to 1988, Casaleggio was employed by the Division of Criminal Justice as a deputy attorney general. In that capacity, he worked with the Special Prosecutor's Unit and State Police Narcotics North Unit.
Casaleggio was authorized to carry a handgun throughout his prosecutorial career.[1] He retired in good standing from the Division of Criminal Justice in 1988. Since that time, he has been employed as a professor at St. John's University.
In June 2009, Casaleggio applied to the Superintendent of State Police for a retired law enforcement officer's permit to carry a handgun. The Superintendent rejected the application for procedural reasons that are not relevant in light of our decision on the merits.
Casaleggio appealed the denial to the Law Division pursuant to N.J.S.A. 2C:39-6(l)(5). Following a hearing, the court entered an order denying the appeal on May 7, 2010. In a written decision, the court noted "that the [L]egislature intended a narrow interpretation of the statute." The court also found the omission of assistant prosecutors and deputy attorneys general from N.J.S.A. 2C:39-6(l) to be significant, particularly in light of the inclusion of "full-time county prosecutor's detective[s] [and] investigator[s]."
In addition, the Law Division judge rejected Casaleggio's argument that he was entitled to a permit under the Law Enforcement Officers Safety Act of 2004 (LEOSA), 18 U.S.C.A. §§ 926B & 926C. The court determined that the law, "as used within [N.J.S.A. 2C:39-6(l)], does not create its own separate route for an applicant to receive a permit." The court also found that N.J.S.A. 2C:39-6(l)'s "specific, exclusive list of occupations" was consistent with the "restrictive nature" of the statute.
Casaleggio appealed the Law Division order on June 18, 2010. He raises the following arguments on appeal:

*1084 POINT ONE

THE COURT BELOW INCORRECTLY FOUND THAT APPELLANT WAS NOT A RETIRED LAW ENFORCEMENT OFFICER ENTITLED TO A HANDGUN CARRY PERMIT PURSUANT TO N.J.S.A. 2C:39-6(l).
POINT TWO
THE COURT BELOW INCORRECETLY FOUND THAT APPELLANT IS NOT A "QUALIFIED LAW ENFORCEMENT OFFICER" AS DEFINED IN THE FEDERAL "LAW ENFORCEMENT OFFICER SAFETY ACT OF 2004" AND IS, THEREFORE, NOT ENTITLED TO A HANDGUN CARRY PERMIT.
It is illegal to carry a handgun in New Jersey without a permit. N.J.S.A. 2C:39-5(b). Indeed, "[t]he permit to carry a gun is the most closely-regulated aspect of gun-control laws." In re Preis, 118 N.J. 564, 568, 573 A.2d 148 (1990). This broad prohibition is subject to various exemptions, one of which covers retired "law enforcement officers." N.J.S.A. 2C:39-6(l). That section provides:
Nothing in [N.J.S.A. 2C:39-5(b)] shall be construed to prevent a law enforcement officer who retired in good standing. . . who semi-annually qualifies in the use of the handgun he is permitted to carry in accordance with the requirements and procedures established by the Attorney General . . . and pays the actual costs associated with those semi-annual qualifications, who is 75 years of age or younger, and who was regularly employed as a full-time member of the State Police; a full-time member of an interstate police force; a full-time member of a county or municipal police department in this State; a full-time member of a State law enforcement agency; a full-time sheriff, undersheriff or sheriff's officer of a county of this State; a full-time State or county corrections officer; a full-time county park police officer; a full-time county prosecutor's detective or investigator; a full-time federal law enforcement officer; or is a qualified retired law enforcement officer, as used in [LEOSA], domiciled in this State from carrying a handgun in the same manner as law enforcement officers exempted under [N.J.S.A. 2C:39-6(a)(7)]. . . .
[Ibid. (emphasis added).]
To decide Casaleggio's first claim, we must consider the legislative intent behind N.J.S.A. 2C:39-6(l). "Although our starting point is to `ascribe to the statutory words their ordinary meaning and significance,' we recognize that sometimes a plain reading will lead to an absurd result that could not have been intended by the Legislature." M.S. v. Millburn Police Dep't, 197 N.J. 236, 250, 962 A.2d 515 (2008) (quoting DiProspero v. Penn, 183 N.J. 477, 492-93, 874 A.2d 1039 (2005)). Our function is not "to `rewrite a plainly-written enactment of the Legislature.'" DiProspero, supra, 183 N.J. at 492, 874 A.2d 1039 (quoting O'Connell v. State, 171 N.J. 484, 488, 795 A.2d 857 (2002)). Nevertheless, we recognize that "common sense should not be abandoned when interpreting a statute." A.B. v. Div. of Med. Assistance & Health Servs., 407 N.J.Super. 330, 341, 971 A.2d 403 (App.Div.), certif. denied, 200 N.J. 210, 976 A.2d 386 (2009).
In light of the language and objectives of N.J.S.A. 2C:39-6(l), we find that assistant prosecutors and deputy attorneys general do not qualify as "full-time member[s] of a State law enforcement agency" for the purpose of obtaining permits to carry handguns. When N.J.S.A. 2C:39-6(l) was enacted, the Legislature indicated that it targeted "retired police officer[s]." Statement to S. Bill No. 916 (March 7, 1996). Unlike police officers and investigators, *1085 both assistant prosecutors and deputy attorneys general are "lawyers first and foremost" whose "essential responsibility is to provide legal advice." In re Eligibility of Certain Assistant Union Cnty. Prosecutors to Transfer to PFRS under N.J.S.A. 43:16A-1 et seq., 301 N.J.Super. 551, 562, 694 A.2d 289 (App. Div.1997). Their primary duty "is to perform legal services in connection with law enforcement." In re Camden Cnty. Prosecutor, 394 N.J.Super. 15, 27, 925 A.2d 63 (App.Div.2007). "Stated simply, they are not police officers." Ibid.
Casaleggio himself recognizes that assistant prosecutors and deputy attorneys general are "not specifically mentioned" in the exemption, and we are convinced that they serve a separate and distinct role in the criminal justice system. This conclusion is bolstered by the fact that active assistant prosecutors and deputy attorneys general are explicitly permitted to carry a handgun under the provision concerning current law enforcement officials. N.J.S.A. 2C:39-6(a)(4). In contrast, these same positions are not enumerated under N.J.S.A. 2C:39-6(l).
Moreover, our interpretation is consistent with the restrictive nature of the State's gun control policy. See State v. Rovito, 99 N.J. 581, 587, 494 A.2d 309 (1985) ("[E]xemptions from gun statutes should be strictly construed to better effectuate the policy of gun control."); State v. Sima, 142 N.J.Super. 187, 193, 361 A.2d 58 (App.Div.1976) (stating that "it is a logical and sensible extension of [New Jersey's gun control] policy to apply it in a restrictive way"), aff'd o.b., 75 N.J. 82, 379 A.2d 1275 (1977). As the Court has stated: "A statute is not to be given an arbitrary construction, according to the strict letter, but rather one that will advance the sense and meaning fairly deducible from the context. The reason of the statute prevails over the literal sense of its terms." Lesniak v. Budzash, 133 N.J. 1, 14, 626 A.2d 1073 (1993) (citation omitted); see also Guiseppi v. Walling, 144 F.2d 608, 624 (2d Cir.1944) (Hand, J., concurring) (stating that "[t]here is no surer way to misread any document than to read it literally"), aff'd sub nom. Gemsco, Inc. v. Walling, 324 U.S. 244, 65 S.Ct. 605, 89 L.Ed. 921 (1945); Carpenter Tech. Corp. v. Admiral Ins. Co., 172 N.J. 504, 521, 800 A.2d 54 (2002) (declining to interpret a statute literally where the result would be contrary to public policy and the spirit of the law).
Casaleggio also argues that he "meets the definition of a `qualified retired law enforcement officer' pursuant to [LEOSA]." LEOSA permits current and retired law enforcement officers to "carry a concealed firearm that has been shipped or transported in interstate or foreign commerce." 18 U.S.C.A. §§ 926B & 926C. It was "designed to protect officers and their families from vindictive criminals, and to allow thousands of equipped, trained and certified law enforcement officers, whether on-duty, off-duty or retired, to carry concealed firearms in situations where they can respond immediately to a crime across state and other jurisdictional lines." S.Rep. No. 108-29, at 4 (2003), 2003 WL 1609540, at 3; see also H.R.Rep. No. 108-560, at 4 (2004) (noting that LEOSA "would allow current and retired police officers to carry a concealed weapon in any of the 50 States").
LEOSA prescribes requirements for eligibility as a "qualified retired law enforcement officer." 18 U.S.C.A. § 926C. Specifically, it refers only to any individual who:
(1) retired in good standing from service with a public agency as a law enforcement officer, other than for reasons of mental instability;
(2) before such retirement, was authorized by law to engage in or supervise *1086 the prevention, detection, investigation, or prosecution of, or the incarceration of any person for, any violation of law, and had statutory powers of arrest;
(3)(A) before such retirement, was regularly employed as a law enforcement officer for an aggregate of 15 years or more; or
(B) retired from service with such agency, after completing any applicable probationary period of such service, due to a service-connected disability, as determined by such agency;
(4) has a nonforfeitable right to benefits under the retirement plan of the agency;
(5) during the most recent 12-month period, has met, at the expense of the individual, the State's standards for training and qualification for active law enforcement officers to carry firearms;
(6) is not under the influence of alcohol or any other intoxicating or hallucinatory drug or substance; and
(7) is not prohibited by Federal law from receiving a firearm.
[18 U.S.C.A. § 926C(c).[2]]
To determine whether LEOSA provides an alternate path to eligibility under N.J.S.A. 2C:39-6(l), we must again look to legislative intent. The Legislature first introduced LEOSA into N.J.S.A. 2C:39-6(l) in 2008. L. 2007, c. 313, § 1. The stated purpose of this change was "to permit retired law enforcement officers from other states . . . who are domiciled in New Jersey to carry a firearm, provided they meet the same training and qualification standards that New Jersey retirees must meet under the law." Assemb. Law & Pub. Safety Comm. Statement to Assemb. Bill No. 2158 (February 23, 2006). This restrictive application corresponds with the limited purpose of LEOSA itself. See Johnson v. N.Y. State Dep't of Corr. Servs., 709 F.Supp.2d 178, 187 (N.D.N.Y. 2010) (finding that the language of LEOSA "only demonstrates an intent to bar the criminal prosecution of retired law enforcement officers who carry concealed firearms in interstate commerce").
We therefore conclude that the reference to LEOSA in N.J.S.A. 2C:39-6(l) does not encompass retired assistant prosecutors or deputy attorneys general.[3] Rather, it is intended to accommodate retired law enforcement officers from out of state who have relocated to New Jersey.
In light of the foregoing, we agree with the Law Division's determination that Casaleggio is ineligible for a retired law enforcement officer's permit to carry a handgun.
Affirmed.
NOTES
[1] N.J.S.A. 2C:39-6(a)(4) specifically permits assistant prosecutors and deputy attorneys general to carry handguns while employed in those capacities, as long as they receive adequate training pursuant to N.J.S.A. 2C:39-6(j).
[2] Congress modified this section on October 12, 2010, subsequent to Casaleggio's application. Pub.L. 111-272, § 2(c), 124 Stat. 2855 (2010). However, none of the changes are material to the issues presented in this case. The original text seen here can be found at Pub.L. 108-277, § 3, 118 Stat. 865 (2004).
[3] Casaleggio concedes "the authority to obtain a carry permit comes only from [N.J.S.A. 2C:39-6(l)], and not [LEOSA]." See Johnson, supra, 709 F.Supp.2d at 184 ("Congress did not expressly intend to create a private cause of action under LEOSA.").